FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 JUL 29 AM 9:59

U.S. DISTRICT COURT
N.D. OF ALABAMA

ALVIS F. AMBROSE and NANCY ]
GAINES, ]
                  ]
    Plaintiff(s), ]
                  ]   CV-03-CO-165-S
    vs. ]
                  ]
FEDERAL RESERVE BANK OF ]
ATLANTA, ]
                  ]
    Defendant(s).



ENTERED

JUL 29 2003

MEMORANDUM OF OPINION

I.   INTRODUCTION.

    Alvis F. Ambrose ("Ambrose") and Nancy Gaines ("Gaines")
allege that the Federal Reserve Bank of Atlanta ("Bank"))
discriminated against them because of their race in violation of
Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.,
§ 2002, *et seq.* ("Title VII"), and Section 1981, 42 U.S.C. § 1981,
1981 (a) ("Section 1981"). On March 7, 2003, the defendant moved
for summary judgment on all claims. (Doc. #7). The issues have been
briefed by both parties and are ripe for consideration. After
consideration of the facts in accordance with the relevant cases
and statutes, the court finds that the motion is due to be
granted.[1]

---

[1]The court notes that the plaintiffs repeatedly suggest that the defendant has
moved for summary judgement on some but not all of its claims. (Docs. #10 and #30).
The court finds this statement confusing because, if anything, the defendant has
addressed more claims on the motion for summary judgment than the plaintiffs listed
in their complaint.

31

II.   FACTS.

A.   Employment Practices of the Birmingham Bank.

The bank maintains a policy providing that it is an equal opportunity employer. (Doc. #9, Exh. #1). The policy provides that the Bank does not discriminate against any person because of age, color, sex, religion, disability, Vietnam-veteran status or national origin.   Andre Anderson ("Anderson") is the highest-ranking operational officer in the Birmingham Branch, where the plaintiffs were employed.   He is African-American.

The Bank has a Performance Review System. (Doc. #9, Exh. #5). Each employee is reviewed annually, and each review is administered according to the Bank's Appraisal of Employee Performance Policy. Each performance review is usually prepared by the individual employee's supervisor, called the "Rater." The performance appraisal is then reviewed and approved by the "Review Rater," a member of management within the  employee's chain of command.  The Department Director or Officer may also read the review, comment as necessary, and approve the rating prior to administration. Anderson reviewed the employees' performance reviews from time to time, including Gaines'. According to Branch policy, all officers, including the Branch Manager, were required to review and approve all "Outstanding" reviews prior to administration.

There are two types of promotions possible at the Bank: career progression promotions and promotions to vacant positions.  Career

progression promotions are made based on an employee's sustained performance skills and development, and the Bank's needs, and recognizes the employee's progression to the next level of responsibility in the job family. The second type of promotion involves a vacancy, and generally the position is posted, if appropriate under Bank policy.  In both types of promotions, the department makes a recommendation for promotion to the Personnel Committee, comprised of the Birmingham Branch officers for final approval.

The Bank provides several opportunities for training for its employees: on the job training; formal and informal Branch training programs; District and System training programs; external training programs; and tuition reimbursement programs. During Anderson's tenure as Branch Manager, employees were surveyed in order to identify areas in which they needed or wanted training.

Bank employees are classified in different salary grades for the purposes of determining compensation. The Bank utilizes a formal Job Evaluation Program to determine the relative difficulty and value of different jobs at the Bank and assigns the appropriate salary grade to each job. The Job Evaluation Program is administered in accordance with the equal opportunity policy. In carrying out the Job Evaluation Program, the Bank annually retains an external consultant to conduct a market analysis, or compensation survey, to objectively determine the market rates for

different types of jobs.  The Bank's salary scale is then adjusted according to the market rates.  From July 1997 through December 2001, within a particular survey grade an individual employee's rate of compensation was determined by considering that employee's performance and relative position in the salary range.

B.   Nancy Gaines.

Gaines is an African-American female who was hired by the Bank in 1974 as a Grade 5 Settlement Clerk Trainee.  Over the course of her employment, Gaines received grade changes but no competitive promotions. (Doc. # 11, Exh. #3).[2]  In 1974, Gaines moved from initial trainee status to her first permanent position as a Settlement Clerk.  In 1980, she was reclassified into a higher grade as a result of a market survey that brought all jobs more in line with the outside market. The Bank indicates that it found her to be "proficient at her job" and that she had particularized expertise in the mechanical aspects of settlement and adjustments. (Doc. # 9, Exh. #K; Doc. #11, Exh. #8).  However, the bank found her supervisory skills somewhat limited, particularly with respect to the delegation and management of the work of her employees. (*Id.*).[3]  The Bank maintains that she never "posted" for any Grade

---

[2]The Bank classified these positions as promotions.

[3]The language of this footnote came from the declaration of Andre Anderson which the plaintiff disputes.  The performance reviews provide numerous positive statements; negative statements include:
1. From 3/31/98 "you need to be more assertive in the unit" and "you are expected to increase the level of feedback;"
2. From 7/99-7/00 "[y]ou must take more responsibility and initiative in the monitoring of suspenses" and statements regarding the need for improved communica-

27 positions or other Supervisor positions, but Gaines suggests that the positions at issue were not posted.[4]

More specifically, Gaines claims that she wanted to be considered for the Grade 26 Lead Clerk in the Cash Letter Credits unit of the Payment Services Department (later known as Customer Services), which was awarded to Victoria Hitchcock on March 1, 1998.[5] In 1998, the defendant hired Michael Jadwin, a white male, to the position of Grade 28 Check Collection Supervisor. The position was not posted.[6] Likewise, in 1999 the Bank hired Jeremy Whitley, a white male, to the position of Grade 28 Check Collection Supervisor. Gaines maintains that she was not considered for the position and that she was more qualified because Whitley possessed no experience in the Bank. Also, in 1999 the defendant hired Blake Andrus, a white male, as a Grade 28 Check Collection Supervisor. Andrus had no experience with the Bank, and the position was not posted.

Gaines was typically rated as an employee who "Exceeded Performance Requirements" on her performance evaluations.

---

tion
3. From 7/00-7/01 "you do not produce the amount of written feedback expected as a specialist."

[4]The Bank's posting policy indicates that "The Human Resources Department will post all regular, full-time and part-time nonsupervisory job vacancies that occur in Grades 23-32 that are not filled by qualified persons from the department having the vacancies." (Doc. #9, Exh. #2). Gaines wanted a supervisor position, so it appears that the positions may not have been posted.

[5]The defendant contends this was a career progression promotion which was merited in accordance with her skill set.

[6]Whether the bank had to post these positions is a fact which is in dispute.

Frequently, Gaines was reviewed by African-American employees. After 1998, she received at least one "Outstanding." Gaines contends that in 1998 one of her performance reviews was lowered from an "Exceeds Performance Requirements" to a "Meets Performance Requirements" while Ellen O'Rear's standard of performance was elevated (O'Rear was a white employee). (Doc. #11, Exh. 37, Gaines Depo. at 53-55). Gaines appealed the rating and it was later changed.

     C.    Alvis Ambrose.

Ambrose is an African-American female who has been employed with the Birmingham Bank for 28 years. Ambrose began her employment with the Bank in 1974 as a Sorter Operator in the Check Collection Department. In 1979 Ambrose resigned from the Bank. In 1980, she received a call from a former supervisor at the Bank, Joel Warren with whom she had a prior working relationship, who asked her to come back to work for the bank. After returning to the Bank, Ambrose resumed her employment in the Check Collection department. She is currently employed at the Bank as a Grade 26 in the Payment Services Department.

Ambrose received an "Exceeded Performance Requirements" rating on every evaluation from April 1, 1998 to September 4, 2001. She also received routine coaching and feedback forms that evaluated her positively though they did note that she needed to improve her interpersonal skills. (Doc. #9, Exh. A, pp. 130-32). As with

Gaines, African-American managers rated and/or reviewed her performance.

As a Grade 25 or 26 employee, she is subject to the same promotion system as Gaines. Although the bank maintains that Ambrose has been promoted four times, from an entry-level Grade 5 Sorter Reader Operator Trainee to a management-level Grade 26 Payment Services Reconcilement Specialist Position, Ambrose contends that these "promotions" were not the type of positions which would allow her to effectively move up within the Bank.[7] In September 1997, the defendant promoted Beth St. John, a white employee to the position of Lead Clerk, Grade 26. The defendant did not post the position and did not consider the plaintiff for the promotion. Ambrose believes she was more qualified due to her more than 19 years experience in the Payment Services Department, while St. John had no experience in the Department.[8] In October of 1997, Ambrose sought and was passed over for promotion in the position of Grade 27 Financial Services Analyst in favor of Cynthia Blackwell. Blackwell's file indicates that she was previously disciplined for performance issues. (Doc. #11, Exh. #13).[9] In July

---

[7]As with Gaines, the parties also dispute the application process for these positions.

[8]The defendant maintains the promotion was merited because St. John had received an "Outstanding" performance rating and three "Exceeded Performance Requirements" and that she was qualified for the career progression promotion because she did not have limitation on her interpersonal skills. (Doc. #9, Exh. K).

[9]Defendant states that this was actually a demotion because at the time she was placed in that position she had previously been a Grade 28 High Speed Processing Coordinator. (Doc. #9, Exh. K).

of 1997, Ambrose sought and was passed over for promotion to Quality Control Specialist, Grade 26 in the Payment Services Department.   The employer instead hired Ashley Patrick, a white female for the position.   Seven months after Patrick was hired she was promoted to the position of Financial Operations Analyst, Grade 27. The defendant did not post the position and did not consider the plaintiff for the position.[10]  Like Gaines, in March 1998, Ambrose was passed over in favor of Victoria Hitchcock, who she claims was less qualified.  Likewise Ambrose realleges that she was passed over and was more qualified for all of the positions Gaines applied for.   Ambrose also applied for the position of Quality Analyst in 1998; however, the position was given to a white applicant, Mary Freeman.

III. STANDARD.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its

---

[10]The defendant maintains that this was an atypical occurrence.  Patrick had applied for a higher-level management position and after observing her capabilities, the defendant determined that she was capable of performing at the higher management level and, via the career progression promotion route, promoted her to a Grade 27 Financial Services Operational Analyst.   The bank maintains that Patrick was uniquely qualified for this route.

motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   DISCUSSION.

    A.   Motion to Strike.

        1.   Plaintiffs' Motion to Strike Andre Anderson Declaration.

The plaintiffs moved to strike the Declaration of Andre Anderson, pursuant to Rule 26 of the Federal Rules of Civil Procedure. (Doc. #12).  The plaintiffs claim that his declaration contains inadmissable testimony and a vague reference to the court's initial order.  Rule 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980); *McClendon v. Georgia Kaolin Co.*, 782 F. Supp. 1548, 1557 (N.D. Ga. 1992).  The plaintiffs' conclusory statement that the declaration does not meet the requirements of Rule 56(e) does not explain to the court what information the plaintiff lacks personal knowledge of or why he is incompetent to testify. Anderson appears to be ideally situated to testify because his job requires him to oversee many aspects of the plaintiffs' training and supervision.  Moreover, the court finds that the plaintiffs had adequate knowledge that the defendant planned to use evidence from Anderson and the plaintiffs have had a full and fair opportunity both to depose Anderson (which they did) and to present their own

affidavits in an effort to oppose the motion for summary judgment. Accordingly, the motion to strike is denied.

    2.   Defendant's Motion to Strike.

The defendant moved to strike portions of the plaintiffs' declarations also pursuant to Rule 56(e). (Docs. #20 and #21). As the court is granting summary judgment wholly in favor of the defendant it  finds that even with the evidence, the plaintiffs have not met their burden to refute the defendant's motion for summary judgment, therefore the motion to strike is denied.

    B.   Procedural Issues.

    1.   Time-Barred Claims.

        a.   Title VII Claims.

Title VII requires a plaintiff to file an EEOC charge of discrimination within 180 days of the alleged discrimination and prior to a lawsuit, or her claim is barred. *See* 42 U.S.C. § 2000e-5(e); *Ross v. Buckeye Cellulose* 980 F.2d 648, 657-58 (11th Cir. 1993); *England v. Compass Bank*, 1999 U.S. Dist. LEXIS 21964, *15 (N.D. Ala. 1999). The policy is not without exception, for example the court may waive the statute of limitations if it finds evidence of a continuing violation or under the doctrine of equitable tolling.

The defendant contends that the claims filed against Patrick, St. John and Blackwell occurred more than 180 days prior to the plaintiffs' EEOC charge and nearly five years before their suit and

thus they should be considered time-barred. The plaintiffs agree that the claims cannot be considered as individual disparate treatment claims. (Doc. #13, p. 5). They argue that the claims are proper as evidence of the defendant's pattern and practice discrimination. As will be explained below, the court is granting summary judgment on the plaintiffs' claims of pattern and practice disparate treatment. Accordingly the motion for summary judgment is granted with regard to individual promotions of Patrick, St. John, and Blackwell.

b.   § 1981 Claims.

Claims filed under Section 1981 are subject to the state personal injury statute of limitations, which in Alabama is two years. *Miller v. Bed, Bath & Beyond*, 185 F. Supp. 2d 1253, 1262 (N.D. Ala. 2002); *Carnegie v. Mutual Sav. Life Ins. Co.*, 2002 U.S. Dist. LEXIS 21396, *18-*20 (N.D. Ala. 2002). The plaintiffs' cite to cases from courts outside of this circuit that have found that the four-year limitations period for actions on statutory remedies created after December 1, 1990 applied to employment discrimination and retaliation claims under § 1981, as it was amended in 1991. *See, e.g. Rodgers v. Apple South Inc.*, 35 F. Supp. 2d 974, 976-77 (W.D. Ky. 1999); *Miller v. Federal Express Corp.*, 56 F. Supp. 2d 955, 964-65 (W.D. Tenn. 1999). However, the court sees no reason to deviate from the reasoning as established in previous cases.

Accordingly, all claims under Section 1981 that arose before January 17, 2001, are barred.

      2. Claims Not Listed in the EEOC Charge.

The scope of a Title VII lawsuit is based on and limited to the scope and charge and the EEOC investigation that could reasonably be expected to grow out of that charge. *Hipp v. Liberty National Life Ins*. Co., 252 F3d 1208, 1226 (11th Cir. 2001); *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000); *Miller v. Bed, Bath & Beyond, Inc.*, 185 F. Supp. 2d 1253, 1263-64 (N.D. Ala. 2002); *Butler v. Matsushshita Industrial Corp.*, 203 F.R.D. 575, 582-83 (N.D. Ga. 2001). Therefore, "an EEOC charge that challenges particular denied promotions may be broad enough to allow judicial claims regarding denied promotions regarding other positions." *Miller*, 185 F. Supp. 2d at 1264. As explained in *Miller*, one other district court in the Eleventh Circuit has held that "where a plaintiff's original charge alleged discriminatory denials of promotions, the investigation could reasonably be expected to include investigation of future denials of promotions as long as the case was still pending before the EEOC; thus, the plaintiff was permitted to pursue other promotion claims not specified in the charge but that arose out of positions denied between the filing of his original charge and the EEOC's issuance of a right-to-sue notice." *Id*. (citing *Butler*, 203 F.R.D. at 581). Following this analysis, the proper cutoff date is September 6,

2000 which is the date the EEOC issued its determination letter. (Doc. #11, Exh. #14).

The defendant argues that the plaintiffs' complaints against Whitley, Andrus and Jadwin must be dismissed because they are not the subjects of a timely-filed charge. Correctly, the defendant notes that the plaintiffs' amended EEOC charges do not list these alleged violations (Doc. #11, Exhs. #18 and #19). However, the alleged violations all occurred prior to (and in fact well before) the EEOC issued its September 6, 2000, determination. Accordingly, the court finds that because the amended charge listed several alleged discriminatory denials of promotions, the investigation into the Bank could reasonably be expected to include future denials of promotion and the court accordingly finds that summary judgment on these grounds is not merited. *Butler*, 203 F.R.D. at 581.

The court declines, however, to give Ambrose the benefit of the doubt on the Mary Freeman claim. Unlike the other claims which, though not listed in the EEOC charges, were subsequently listed in the complaint, Ambrose never mentioned the Mary Freeman claim until she responded to the defendant's motion for summary judgment. As the defendant correctly stated, it is a basic and fundamental principle that a complaint must state the plaintiff's claims plainly. Fed. R. Civ. P. 8(a). Although courts have considerable discretion to allow parties to amend their complaints,

the plaintiffs must take the initiative to do so.   *See Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001 ("[w]hen [p]laintiffs have had ample opportunity to amend their complaint, but have failed to do so, nothing compels us to remand to amend. ... when plaintiff failed to request leave to amend the complaint in district court") (citations omitted); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999)(stating that the court is not required to *sua sponte* grant leave to amend).   Accordingly summary judgment is granted in favor of the defendant on the plaintiffs' charge that Mary Freeman was  promoted as the result of discriminatory practices.

    C.   Disparate Treatment Claims.

There are two theories of intentional discrimination a plaintiff may allege under Title VII: individual disparate treatment and pattern and practice discrimination. *Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001).   Although the complaint appears to list only pattern and practice claims (except for the claim of disparate compensation), the parties briefed the failure to promote claims as individual disparate treatment claims. The court will address each form of disparate treatment in turn.

1.   Pattern and Practice.[11]

The plaintiffs' original complaint listed all of their disparate treatment claims (except the disparate treatment in compensation claim) as "pattern and practice." A "pattern or practice case" is not a separate and free-standing cause of action, it is merely another method to show disparate treatment. *Celestine v. Petroleos de Venezuela*, 266 F.3d 343, 355 (5th Cir. 2001). Pattern or practice cases are typically brought by either the government or as a class action to establish that the employer discriminates in such a manner that it is in effect its standard operating procedure. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 (1977); *EEOC v. Joe's Stone Crab Inc.*, 220 F.3d 1263, 1274 (11th Cir. 2000); Tristin K. Green, *Discrimination in Workplace Dynamics: Toward a Structural Account of Disparate Treatment Theory*, 38 Harv. C.R.-C.L. L. Rev. 91, 120 (2003). The suits are brought in two parts, at stage one the plaintiffs first litigate the common questions of fact – that is, whether the employer utilized a pattern or practice which

[11]The court notes that this case was originally brought on behalf of seven plaintiffs and was severed by Judge Johnson on January 23, 2003, where she opened up four cases. *Drake et al., v. Federal Reserve Bank*, CV-02-J-146-S (Doc. # 31). The plaintiffs did not amend their complaint after the severance, instead their submission to this court was identical to that filed with Judge Johnson with circles drawn around the appropriate plaintiffs. The complaint lists only pattern and practice disparate treatment claims except for the specific disparate treatment claim of compensation. The motion to sever asks the court to address the claims individually, yet the parties' briefs (though they cite to no cases of pattern and practice discrimination) still mention the terms pattern and practice. Although the complaint was not amended and Judge Johnson's order severing the cases did not specifically state that all of the disparate treatment claims were to be treated individually, in an abundance of caution, the court will assume that the plaintiffs intended to address their claims as pattern and practice claims.

discriminated against the class. *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 880 (1984). When the plaintiffs prove the existence of such a practice, then that finding creates a presumption that the individual class members were the victims of the discriminatory practice and the individual claims are litigated in phase two. *Teamsters,* 431 U.S. at 361-362.

The Supreme Court has never applied the *Teamsters* method of proof in a private, non-class suit charging employment discrimination and other courts who have addressed the issue have declined to apply it in such a context. *See Lowrey v. Circuit City, Inc.*, 158 F.3d 742, 760-61 (4th Cir. 1998), *vac. on other grounds*, 527 U.S. 1031 (1999); *Celestine v. Petroleos de Venezuela*, 266 F.3d 343, 355-56 (5th Cir. 2001); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 866-67 n. 6 (7th Cir. 1985) ("Plaintiffs' use of 'pattern-or-practice' language also seems to be misplaced, since such 'suits, by their very nature, involve claims of classwide discrimination' ... and the five plaintiffs while attacking policies that would have affected all of Jewel's women employees as a class, have stated only their individual claims, not a class action.") (citation omitted); *Victory v. Hewlett-Packard Co.*, 34 F. Supp. 2d 809, 821 (E.D.N.Y. 1999) (noting that plaintiffs are not likely to bring a pattern or practice claim unless it is a class action suit or "where, at least, numerous plaintiffs are joined in the action"); *Cooper v. Diversicare Management Serv. Co. Inc.*, 115

F. Supp. 2d 1311, 1322 n.13 (M.D. Ala. 1999) (suggesting that individual plaintiffs cannot bring pattern or practice cases).

Even if the court does not allow the plaintiffs to proceed with the pattern or practice theory, the plaintiffs may still use evidence of a pattern or practice to help prove claims of intentional discrimination within the *McDonnell Douglas* framework. *Lowrey*, 158 F. 3d at 760-61; *Cooper*, 115 F. Supp. 2d at 1322 n.13. In this case, the court finds that allowing the plaintiffs to use their pattern or practice claims as evidence is the most appropriate route.  Curiously, the plaintiffs' submission never mentions the *Teamsters* framework or suggests that the plaintiffs ever had any intention of proceeding as part of a class-action. Moreover, they have not asked the court for a bifurcated trial and allude only abstractly to their pattern or practice claims in their briefs.  Rather than asking the court to redress widespread discrimination, the bulk of the plaintiffs' briefs address their individual claims of disparate treatment. *Lowrey*, 158 F.3d at 762. Accordingly, the court grants the defendant's motion for summary judgment on the plaintiffs' claims for pattern or practice discrimination as a separate claim.

      2.    Individual Disparate Treatment Claims.

        a.    General Analytical Framework.

If a plaintiff is to prevail on her disparate treatment claims, she must submit some proof of her employer's discriminatory

motive, that is, some causal link between her race and the actions of which she complains. *See Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000). In a Title VII case such as this, where the plaintiff relies solely upon circumstantial evidence, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 & n. 6 (1980), 101 S. Ct. 1089, 1094 & n. 6, 67 L. Ed. 2d 207 & n. 6. "Demonstrating a prima facie case is not onerous, it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Lathem v. Department of Children & Youth Servs.*, 172 F.3d 786, 792 (11th Cir. 1999). Typically the prima facie case requires proof that the plaintiff was: (1) a member of the protected group (2) subjected to an adverse employment action (3) qualified to do the job; and (4) replaced or lost the position to someone outside of that protected group. *McDonnell Douglas*, 411 U.S. at 802; *Id.* at 802 n.13 ("The facts necessarily will vary in Title VII cases, and specification . . . of the prima facie proof required from [the plaintiff] is not necessarily applicable in every respect to differing factual situations."); *accord Chapman*, 229 F.3d at 1024 (summarizing the factors in an ADA disparate treatment case).

Once the plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a "legitimate nondiscriminatory reason" for the alleged discriminatory employment action. *Lathem*, 172 F.3d at 793. "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Chapman*, 229 F.3d at 1024 (quoting *Burdine*, 450 U.S. at 254-55, 101 S. Ct. at 1094 (citation and footnote omitted)).

After the employer presents a legitimate nondiscriminatory reason for its action, the presumption of discrimination is eliminated leaving the elements of the prima facie case. *Id*. at 1024-25. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the employer was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *Id*. The plaintiff may meet this burden by persuading the fact-finder either directly that a discriminatory reason more than likely motivated the employer, or indirectly that the employer's proffered explanation is unworthy of belief. *Id*. If the plaintiff succeeds in meeting this burden, the disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination and preclude summary judgment. *Id*. at 1025.

b.    Specific Allegations.

(1)   Failure to Promote.

The plaintiffs did not apply for many of the jobs where they contend that the defendant failed to promote them. Therefore, plaintiffs are somewhat hindered by the fact that they cannot prove an ordinary prima facie case which requires proof that the plaintiff (1) is a member of a protected minority group; (2) was qualified and applied for a promotion; (3) was rejected in spite of her qualifications and (4) the individual who received the promotion is not a member of a protected group and had lesser or equal qualifications. *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 643 (11th Cir. 1998). The plaintiffs admit that they did not apply for the jobs at issue but maintain that the court should follow the Seventh Circuit which has held that "when an employer uses a promotion system in which employees do not apply for promotions but rather are sought out by managers, the application requirement of the prima facie case is loosened somewhat." *Box v. A&P Tea Co.*, 772 F.2d 1372, 1376 (7th Cir. 1985); *Wagner v. G.A. Gray Company*, 872 F.2d 142,146 (6th Cir. 1989). The employee can establish a prima facie case by showing that, had she known of the opening she would have applied. *Box*, 772 F.2d at 1376. Somewhat analogously, the Eleventh Circuit has created an exception to the application requirement in situations where an employer fails to post proper notice of the opening to interested employees.

*Gaddis v. Russell Corp.*, 242 F. Supp. 2d 1123, 1135 n.6 (citing *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133-34 (11th Cir. 1984). There, the court reasoned that the employee's failure to apply should not defeat the prima facie case because an employer is presumed to "consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest." *Id.* (quoting *Carmichael*). Likewise, the Eleventh Circuit has also relaxed the prima facie requirement in cases where the plaintiff provides evidence that an application would have been futile due to the employer's discriminatory practices. *See Gonzalez v. Florida Dep't of Highway Safety and Motor Vehicles*, 237 F. Supp. 2d 1338, 1347 (S.D. Fla. 2002) (citing *Taylor v. Hudson Pulp and Paper Corp.*, 788 F. 2d 1455, 1462 (11th Cir. 1986)). Conversely, the defendant maintains that the plaintiff must consider the prima facie case in terms of a "career progression promotion." According to the defendants, the plaintiff would have to show that she was entitled to progress to the next level, was entitled to do so at some point in time, and was denied the opportunity to do so because of her race. The defendant, however, cites absolutely no caselaw in support of this alternative prima facie case, accordingly the court will apply that proffered

by the plaintiffs since it appears to have some basis in federal law.[12]

Based on the Eleventh Circuit's practice of relaxing the prima facie case in similar circumstances and given the precedent from the Sixth and the Seventh Circuit, the court does find that the plaintiffs can establish this element of the plaintiffs' prima facie case.  In this case both plaintiffs contend that they were interested in progressing to the higher managerial levels.[13] Meeting this hurdle, however, does not mean that the plaintiffs have met the other prongs of the prima facie case which the court will discuss in more detail in the subsequent sections.

(a)   Gaines's Failure to Promote Claims.

i)    Victoria Hitchcock.

Gaines contends that she wanted to be considered for the Grade 26 Lead Clerk in the Cash Letter Credits Unit of the Payment Services Department which was awarded to Victoria Hitchcock on March 1, 1998.  The defendant maintains that this position would not have been a promotion for the plaintiff, and thus it did not consider her for it.

---

[12]The defendants cite to *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1269 (11th Cir. 2001) where the court did not list the requirements of the prima facie case, much less the elements posited by the defendant.  Instead the court considered the case in terms of whether the plaintiff could carry her burden in proving that the employer's proffered legitimate nondiscriminatory reason was proof of pretext.

[13]The court notes that whether they expressed this interest is a disputed fact.

Gaines somewhat concedes that, because she was already employed at Grade 26, a transfer to the Cash Letter Credits Unit would not have been a direct promotion. However, she suggests the move would have amounted to a promotion because she would gain experience in a different part of the department. (Doc. #11, Exh. #3). Gaines has failed to prove that not receiving the transfer amounted to an adverse employment action and therefore she has failed to state a prima facie case. Whether an action is adverse is decided on a case-by-case basis. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 589 (11th Cir. 2000). To establish an adverse employment action, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment ... the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1240 (11th Cir. 2001); *see also Tarrance v. Montgomery Cty. Bd. of Educ.*, 157 F. Supp. 2d 1261, 1266 (M.D. Ala. 2001) (plaintiff not subjected to adverse employment action when he was switched from one type of manual labor to another); *Bell v. Eufaula City Bd. of Educ.*, 995 F. Supp. 1377, 1385-86 (M.D. Ala. 1998) (transferring teacher from eighth grade class to seventh grade class not an adverse employment action, even though it required the teacher to review new books, create new lesson plans, engage in new

preparation, and leave a subject he loved teaching); *Merriweather v. Alabama Dep't of Public Safety*, 17 F. Supp. 2d 1260, 1276 (M.D. Ala. 1998) (denying plaintiff employed in defendant's main office a position in the outlying county offices not an adverse employment action, even though it would have involved less work); *Smith v. Alabama Dep't of Pub. Safety*, 64 F. Supp. 2d 1215, 1222 (M.D. Ala. 1999) (transfer of state trooper from one city to another city did not constitute an adverse employment action, even though it caused trooper a longer commute to work, emotional problems, and great embarrassment for being transferred without a promotion). As one court summarized, "[w]hile not everything that makes an employee unhappy is an actionable adverse action, conduct that alters an employee's compensation, terms, conditions or privileges of employment does constitute adverse action.'" *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (quoting *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1118 (11th Cir. 2001)).

Although Gaines maintains that gaining experience in different parts of the department would have been valuable, she specifically states "this position may not have been a promotion for me." (Doc. #11, Exh. #3). The court notes that although she subjectively might have liked to have gained more experience, she has pointed to no evidence which would suggest that getting this position would have placed her on a faster-track to subsequent promotions.

Accordingly, the plaintiff has not met her burden in establishing a prima facie case and summary judgment is granted in favor of the defendant.

ii)  Jadwin, Whitley, and Andrus.

Gaines also contends that the hiring of Jadwin, Whitley and Andrus as Grade Check Collection Supervisors was discriminatory. Although the bank maintains that it did not know that Gaines was interested in the positions, the court will draw inferences in favor of the plaintiff that she would have applied had she known about the openings.  Here, the defendants explain that they examined all potential internal candidates who could have been qualified and decided that it would be necessary to hire outside of their current employees. (Doc. #9, Exh. K).

Gaines proffers that the bank has failed to state a legitimate non-discriminatory reason for not hiring her because the Bank never in fact considered her for the position. In *Turnes v. AmSouth Bank*, 36 F.3d 1057, 1061 (11th Cir. 1994), the court held that the employer did not meet its burden of production when it "offered a justification that it did not know or did not consider at the time the decision was made." *See also Joshi v. Florida State University Health Ctr.*, 763 F.2d 1227 (11th Cir. 1985) However, unlike *Joshi* and *Turnes*, the plaintiff has provided no evidence to suggest that the bank did not assess the internal candidate pool to determine whether there were qualified applicants.  Gaines has offered the

deposition testimony of Frederic Fullerton, a member of the personnel committee, where he stated that Gaines was never considered for a Grade 27 promotion, but this testimony has no bearing on whether there were qualified candidates for a Grade 28 position. (Doc. #11, Exh. #27, p. 225).

As the court finds that the defendant has met its burden of production, its attention now shifts to the plaintiff's proof that this reason is pretextual. Gaines maintains that she was more qualified for the job because she had a record of outstanding performance and over twenty-five years of experience in every functional area. However, the defendant points out that Jadwin had previous experience as a Branch Manager, Assistant Branch Manager, and Financial Representative for a branch of American General Finance, Inc. Likewise, Whitley had experience as a Branch Manager at two branches of American General Finance, Inc., and Andrus had experience as a Branch Manager and as an Expediting Manager for Marc Steel Co. (Doc. #9, Exh. K). The court notes that in failure to promote cases the disparity in qualifications must be such that it is "so apparent as to virtually jump off the page and slap you in the face." *See Denney v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir. 2001) (citing *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253-54 (11th Cir. 2000)). The disparities in this case are not so marked. Moreover, Gaines' added evidence of previous acts of alleged discrimination in hiring as well as its statistical

evidence that whites received more outstanding comments on their annual Performance Evaluations do not suggest by a preponderance of the evidence that the Bank's reason is pretextual, particularly where it hired other African-Americans to fill other vacancies for positions similar to this one. Accordingly, summary judgment is granted in favor of the defendant on Gaines' failure to promote claims because she has failed to establish by a preponderance of the evidence that the employer's reasons were pretextual.

(b)   Ambrose's Failure to Promote Claims.

The court finds that the analysis with respect to subsection (a) is applicable to the Ambrose's claims because she was an internal candidate who the employer considered and determined that it needed to look outside of the Bank's current employees.   Thus, the only claim that the court will examine is Ambrose's claim regarding Hitchcock. Ambrose's prima facie case is not in dispute because she was employed at Grade 25 at the time Hitchcock was hired, and the court has already addressed the plaintiff's challenges to the employer's proffered legitimate nondiscriminatory reason.   Here the defendant maintains that it chose to promote Hitchcock before Ambrose because she had a strong record and because she had better interpersonal skills than Ambrose.   Concerns regarding Ambrose's interpersonal skills are well-documented (Doc. #9, Exh. #7).   While Ambrose challenges Hitchcock's qualifications, her record reveals one disciplinary violation in 1987 and a record

which indicates no problems in terms of her interpersonal skills. (Doc. #11, Exh. #10). As with Gaines, the disparities between Ambrose and the other candidates are not radically apparent, therefore the court finds that the plaintiff has failed to meet her burden that her employer's reasons for hiring Hitchcock are merely a pretext for discrimination. Accordingly, summary judgment is granted on Ambrose's failure to promote claims.

(2)   Training Claims.

The plaintiffs contend that the defendant habitually slotted white employees into positions which allowed for upward mobility at the bank and then gave them specialized training so they could be further promoted. Both of the plaintiffs have failed to specify a single training opportunity that they were denied or to identify a single similarly situated white employee who was offered an employment training opportunity.  Outside of their generalized and conclusory declarations, they have submitted but one piece of relevant evidence. Exhibit 23 is a letter where Brenda White, a former co-plaintiff in this action contends that she asked for and was denied a single training opportunity. Gaines' deposition indicates that she received all the training she requested. (Doc. #9, Exh. B, p. 61).  Also, while Gaines' declaration states that she did not receive training, it does not point to any other similarly situated white employee who received additional training opportunities.   Likewise, Ambrose filled out a survey which

indicated that she felt she had sufficient training in the areas her employer determined were important and otherwise lists no other similarly situated white employee who received advanced training opportunities. (Doc. #11, Exh. A, Exh. #11). The plaintiffs' theory seems to tie their failure to promote claims with failure to train claims - if they had been on a promotion track others would have offered them training opportunities. The plaintiffs' claims seem speculative at best. Accordingly, the court grants summary judgment in favor of the defendant because the plaintiffs have not established a prima facie case.

(3)   Performance Appraisal Claims.

Plaintiffs contend that they were not awarded "outstanding" on their performance evaluations and that the reviews were performed in a discriminatory manner.  Unlike the plaintiffs' previous failure to promote claim which the court did not consider to be an adverse employment action, the "outstanding" rating leads to significant monetary benefits such as a $1,000 to $1,500 Performance Cash Award. (Doc. #11, Exh. #17). To establish a prima facie case, the plaintiffs must prove (1) membership in a protected class, (2) that they were qualified to receive an outstanding performance rating, (3) they did not receive a rating of outstanding despite their qualifications, and (4) other employees outside of the protected class who had equal or lesser qualifications received the rating. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

Page 30 of  37

(1980).   The  defendant  maintains  that  the  plaintiffs  cannot
establish their prima facie cases because they have pointed to no
similarly  situated  white  employees  who  received  an  outstanding
ahead of them.

The court cannot simply ignore the similarly situated prong.
As  the  Eleventh  Circuit  has  stated  "[i]n  determining  whether
employees  are  similarly  situated  for  purposes  of  establishing  a
prima facie case, it is necessary to consider whether the employees
are  involved  in  or  are  accused  of  the  same  or  similar  conduct."
*Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir.
2001); *see also Sanguinetti v. United Parcel Service*, 114 F. Supp.
2d 1313, 1317 (S.D. Fla. 2000) (citing *Mitchell v. Toledo Hosp.*,
964 F.2d 577, 583 (6th Cir. 1992)) (explaining how employees must
be similarly situated).

In her affidavit, Gaines contends that her supervisor,
Forsetta  McCord,  had  a  conversation  with  *her*  supervisor,  Doug
Orazine, who rejected McCord's recommendation that Gaines receive
an "Exceeds Requirements" and instead instructed her to evaluate
her at a "Meets Requirements" while simultaneously raising the
score for a white employee.  (Doc. #11, Exh. #3; Doc. #9, Exh. #3).
The court notes that upon the plaintiff's request, the employer
subsequently  reviewed  this  score  and  raised  it  to  "Exceeds
Requirements."  Even if this had not been the case, the court finds
that this statement, which combines several levels of hearsay, does

not prove that other employees received a rating of "Outstanding" ahead of the plaintiffs.

The plaintiffs also offer statistics to bolster their position which document that more white employees than  African-American employees received an outstanding rating.[14] Nevertheless, though the statistics point out an overall higher percentage of whites who received the performance rating (which would be helpful in proving pretext) they do not help the plaintiffs meet their burden of proving that similarly situated white employees received a ranking of outstanding and the plaintiffs did not.   Accordingly, the plaintiffs have failed to meet their burden and summary judgment is granted in favor of the defendant.

(4)   Compensation Claims.

Plaintiffs' complaint alleges that they were paid less than similarly situated white employees on account of race. As with the previous sections, each plaintiff must prove that (1) she is a member of the protected category; (2) she received low wages; (3) similarly situated persons outside the protected category received higher wages (4) she was qualified to receive higher wages. *MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991).  The plaintiffs have not presented any evidence that they were paid low wages or that any salary disparity existed

---

[14]The exact percentage is 9% of white employees and 3.5% of non-white employees received an outstanding rating.  Fifteen total employees were rated as outstanding.

between them and similarly situated white employees.   Gaines'

evidence of a lower salary was that "[w]e had a lot of hearsay go

on where we worked, a lot of hearsay.  So from things that I was

hearing, my pay, my pay wasn't up to what theirs was." (Doc. #9,

Exh. B, p. 81).

The rule regarding hearsay in the Eleventh Circuit has been

explained as follows:

> The general rule is that inadmissable hearsay
> "cannot be considered on a motion for summary
> judgment" (citation omitted).  Rule 56(e) of
> the Federal Rules of Civil Procedure requires
> that  "affidavits"  that  support  or  oppose
> summary judgment motions "shall be made on
> personal knowledge, shall set forth such facts
> as would be admissible in evidence."  This
> rule also applies to testimony given on
> deposition.  Some courts, including our own,
> appear to have restated the general rule to
> hold that a district court may consider a
> hearsay statement in passing on a motion for
> summary judgment if the statement could be
> "reduced to admissible evidence at trial" or
> "reduced  to  admissible  form."  (Citation
> omitted).  These courts have coined these
> phrases from language appearing in the Supreme
> Court's decision in *Celotex Corp. v. Cartrett*,
> 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d
> 265(1986), which held that a nonmoving party,
> in opposing a motion for summary judgment,
> need not produce affidavits, but may refer the
> district court to "pleadings, depositions,
> answers to interrogatories, and admissions on
> file," as provided by FRCP 56(c).

*Macuba v. DeBoer*, 193 F.3d 1316, 1322-23 (11th Cir. 2000)(footnote

and citations omitted).  The court went on to define admissible

evidence as that which: (1) falls within an exception to the

hearsay rule; (2) is used solely for impeachment purposes; or (3)

Page 33 of  37

are statements which are not hearsay at all. *Id.* It is not clear which of the exceptions Gaines believes this statement meets. Gaines has submitted no affidavits of employees who received more money, her testimony does not address who might testify and from what basis, and so this court cannot consider the evidence to be "reduced to admissible evidence." *Id.* Moreover, Gaines' claim is highly speculative - in essence she claims that she should have received a rating of outstanding which would have in turn qualified her for a raise.   There are simply too many jumps of logic the court would have to make to find that other similarly situated white employees were compensated differently.

Likewise Ambrose provides absolutely no evidence other than her own conclusory statements that she received compensation lower than similarly situated white employees.   Accordingly, the court finds that the plaintiffs have not met their burden in establishing a prima facie case and the court will grant summary judgment in favor of the defendant.

D.   Disparate Impact Claims.

The plaintiffs also assert disparate impact claims under Title VII and § 1981.   As a threshold matter the court notes that disparate impact claims are not available under § 1981. *Reid v. Lockheed Martin Aeronautics Co.* 205 F.R.D. 655, 667 n.15 (N.D. Ga. 2001).   Therefore, the plaintiffs' § 1981 claim is dismissed. Disparate impact claims remedy practices that are in essence "fair

in form, but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). More specifically, Congress required the "removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Id.* A plaintiff asserting a disparate impact claim must show that a facially neutral requirement or policy of the defendant disproportionately and adversely affected members of a group. After the plaintiff makes this initial showing, the defendant then bears the burden of establishing that the requirement or policy was necessary and job-related. *Id.* at 436. Unlike disparate treatment claims, the plaintiff does not have to prove discriminatory intent. *EEOC v. Joe's Stone Crab Inc.*, 220 F.3d 1263, 1273 (11th Cir. 2000). For example, in *Griggs*, the plaintiffs established their prima facie case by showing that black employees routinely performed worse than their white counterparts on an intelligence test which employees had to pass in order to receive certain promotions. 401 U.S. at 432. When the defendant could not prove that an employee's score correlated with his ability to perform the job, the Court found that it was discriminatory.

The plaintiffs allege that the defendant's facially neutral performance review policy was applied in such a way that white employees received a rating of "outstanding" more frequently than African-American employees. Specifically, Gaines contends that her

score was lowered so that a white employee's could be raised. The crux of the complaint appears to be that the disparity is due to the discriminatory application of the performance review criteria rather than the disparate effect of the policy as neutrally applied. Though the Eleventh Circuit has not ruled on this precise issue, other courts have found that such practices effectively amount to disparate treatment claims and that summary judgment on the disparate impact claim is appropriate.

For example, in *Cruz v. Coach Stores, Inc.*, the plaintiff challenged her employer's disciplinary policy. 202 F.3d 560, 572 (2nd Cir. 2000). She maintained that because only Hispanic employees had been terminated under the policy, it had a disparate impact on minority employees. *Id*. The court found that summary judgment was appropriate because she failed to establish that the employer established a facially neutral policy which happened to have a discriminatory effect, when in fact her theory was that the policy essentially amounted to a sham to exclude members of a protected class. *Id.*; *see also Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir. 1997) (noting that a plaintiff's theory that a college putatively used a neutral screening process so that it could hire young, white women was not a disparate treatment but a disparate impact claim).

The court finds that this type of complaint is much more analogous to what the plaintiffs here have raised. They do not

appear to challenge the performance rating system as a facially neutral practice, rather they address it as part of a broader policy of the bank management to prevent minority employees from moving up to high ranks in the bank.   Thus, the claim was adequately presented and addressed under the disparate treatment rubric.   Accordingly, summary judgment is granted for the defendants on this claim.

V.   CONCLUSION.

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this ___29th___ of July, 2003.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

F:\WPDOCS\Coogler\CLERK1\Liz\OPINIONS\EMPLOYMENT
DISCRIMINATION\Ambrose v. Fed Reserve (Cv-02-CO-165-S)(sj).wpd